UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

William Albert Maecker,

                               Plaintiff,

                                                           **Hon. Hugh B. Scott**

                                                            13CV305A

                           v.

                                                            **Order and**
                                                            **Report &**
                                                            **Recommendation**

Everhome Mortgage Company,

                                Defendant.
_____

      Before the Court are the following motions: defendant's motion to dismiss (Docket No. 8), the plaintiff's cross-motion for summary judgment (Docket No. 13) and the plaintiff's motion to expedite and to amend the complaint (Docket No. 16).

**Background**

      The plaintiff, William Albert Maecker ("Maecker"), commenced this action claiming that defendant Everhome Mortgage Company ("Everhome"), failed to disburse the funds of the loan ruining his restoration of a landmark residence. Everhome is alleged to be servicing a loan [#122905-3] originated by Alliance Mortgage Banking Corportation ("Alliance"). (Docket No. 1 at page 3). The plaintiff asserts in a conclusory manner that the defendant's conduct is a "breach

of contract, tortious interference, abuse of process, accounting fraud in lending." (Docket No. 1 at page 3-4). The plaintiff's claims appear to revolve around his efforts to restore his residence at 133 Central Avenue in Silver Creek, New York. Maecker claims that Alliance, which is not a party to this action, had its license to lend in New York suspended in 2007. (Docket No. 1 at page 7). He asserts that he and his wife divorced in 2000 and that his divorce was caused by the breach of contract by Alliance. (Docket No. 1 at page 6-7). As the "factual allegations" in support of the instant complaint, the plaintiff "alleges fraud by Alliance in the loan to plaintiff's family." (Docket No. 1 at page 8, ¶ 22). Maecker further asserts that "Alliance closed the loan but failed to fund disbursements for rehab" causing his project to fail. (Docket No. 1 at page 8, ¶¶ 24-25). The plaintiff asserts that '[e]xtensive proximate damages have occurred as result of Alliance fraud. (sic)." (Docket No. 1 at page 8, ¶ 28). Without articulating any specific factual basis, Maecker seeks "municipal funds" of $2,000,000 for Silver Creek, the Town of Hanover and Chautauqua County "to be applied toward Preservation, modernization and development of Village and 133 Central with Secondary institutions." (Docket No. 1 at pages 9-10, ¶ 51-52). For the State of New York, the plaintiff apparently seeks $10,000,000.00 "to be applied to Historic Preservation." (Docket No. 1 at page 10, ¶ 53). For the "USA", Maecker wants $100,000,000.00 "to be invested in Makerhomes" which is apparently one of Maecker's business interests. (Docket No. 1 at page 10, ¶¶55-56). He seeks $204,000 for Judith L. Stenroos and children Zachary and Grace (Maecker's ex-wife and children). (Docket No. 1 at page 10, ¶ 58). Maecker seeks an additional $2,000,000.00 for the "businesses of William A. Maecker." (Docket No. 1 at page 10, ¶59). In total, the plaintiff claims that he and his business interests were damaged in the amount of $123,204,000.00. (Docket No. 1 at page 10, ¶ 64).

Except from alleging that Everhome services the loan originated by Alliance, there is no mention of Everhome in the complaint.

Everhome asserts that on May 22, 1995, Judith Lynn Stenroos ("Stenroos"), the plaintiff's ex-wife, obtained a loan in the amount of $108,100 from Alliance. As security for the loan, a mortgage was taken on 133 Central Avenue. (Docket No. 8-2, ¶ 3). Alliance assigned the mortgage to Federal Savings Bank ("Federal"). On December 27, 1996, Stenroos obtained another loan from Federal combining the two loans into a single loan of $78,297.00. Again, a mortgage on 133 Central Avenue was taken with respect to this loan. (Docket No. 8-2 at ¶ 5). On January 29, 1998, Stenroos obtained an additional loan from Federal, and combined that new loan with the previous loans into a single loan of $77,940.00, with a mortgage of 133 Central Avenue as security. (Docket No. 8-2 at ¶ 7). On March 27, 1998, Federal assigned the mortgage to First Commercial Mortgage Company ("First Commercial"). (Docket No. 8-2 at ¶ 9). On January 4, 2010, the mortgage was assigned to EverBank (the successor of Everhome)[1]. (Docket No. 8-2 at ¶¶ 10).

**Discussion**

Everhome has filed a motion to dismiss the complaint based upon a failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 8). The defendant argues that the plaintiff has no standing to bring an action relating to the loan obtained by Stenroos, which is currently serviced by Everhome. Everhome contends that all

---

[1] Inasmuch as the caption has not been amended, the Court will refer to the defendant as Everhome. Notwithstanding, it has been represented that EverBank is the successor of Everhome. (Docket No. 8-1 at page 1).

of the relevant mortgages and promissory notes were signed by Stenroos only, and Stenroos is the only person making payments on the loans. Further, the defendant argues that even if Maecker did have a relationship with Everhome, the plaintiff has failed to state a claim that would entitle him to relief.  (Docket No.  8-1 at page 1).

**Standard of Review**

The defendant has moved to dismiss the Complaint on the grounds that it fails to state a claim for which relief can be granted. The Supreme Court has held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), that a Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face," Bell, 550 U.S. at 570; Hicks v. Association of Am. Med. Colleges, 2007 WL 1577841 (D.D.C. May 31, 2007). To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, *supra,* 550 U.S. at 555; Hicks, supra  2007 U.S. Dist. LEXIS 39163, at *5, 2007 WL 1577841. As reaffirmed by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [ *Twombly, supra,* 550 U.S .] at 570.... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556.... The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.,*

at 557 ... (brackets omitted)."

Iqbal, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed.R.Civ.P. 10(c), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir.1985). In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the Complaint. Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir.1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F.Supp.2d 123 (N.D.N.Y.2002). "When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint," Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir.1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

When a party goes beyond the pleadings in response to a Rule 12 motion, under Rule 12(d) the motion to dismiss may be converted into a motion for summary judgment. Here, the defendant refers to loan documents that were not attached to the complaint. The plaintiff has also filed a cross-motion for summary judgment. (Docket No. 13). Thus, the Court will treat the instant motion as a motion for summary judgment. Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter

of law. See Trans Port, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (citing Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The Court must draw all reasonable inferences in favor of the non-moving party and grant summary judgment only if no reasonable trier of fact could find in favor of the non-moving party. See Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991); Howley v. Town of Stratford, 217 F.3d 141 (2nd Cir. 2000). However, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Information, Co., 970 F.2d 1110, 1112 (2d Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2d Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The non-moving party must come forward with enough evidence to support a jury verdict . . . and the . . . motion will not be defeated merely . . . on the basis of conjecture or surmise." Trans Sport, 964 F.2d at 188 (citing Bryant v. Maffucci, 923 F.2d at 982). If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the non-moving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992) (citing Dusanenko v. Maloney, 726 F.2d 82 (2d Cir. 1984). The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them. See Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2d Cir. 1990). However, summary judgment is appropriate "[w]here the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2d Cir. 2000) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Motion to Dismiss**

    Standing

The plaintiff's complaint sets forth numerous conclusions without any apparent nexus. The plaintiff states that he has invested money in 133 Central Avenue; that he and his wife divorced in 2000; that the divorce was caused by Alliance's alleged breach of contract; that there is a related case in Silver Creek Village Court ("Appeal K-2012-001646 Judith Lynn Stenroos v. William A. Maecker"), and that Alliance committed some kind of unspecified fraud and failed to fund the loan to restore his house. Everhome asserts, and the plaintiff has not refuted, that Stenroos received the proceeds of the loans she obtained from Alliance and Federal, and that Stenroos continues to make payments to Everhome in accordance with her obligations under the loan agreements. (Docket No. 8-1 at page 7).

To satisfy constitutional standing requirements, a plaintiff must prove: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision. See Kreisler v. Second Ave. Diner Corp., 731 F.3d 184 (2nd Cir. 2013); Field Day, LLC v. County of Suffolk, 463 F.3d 167, 175 (2d Cir.2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Plaintiffs seeking injunctive relief must also prove that the identified injury in fact presents a "real and immediate threat of repeated

injury." Shain v. Ellison, 356 F.3d 211, 215 (2d Cir.2004).

Read liberally, the plaintiff attempts to assert claims of "breach of contract, tortious interference, abuse of process, ... [and] fraud in lending" against Everhome (Docket No. 1 at page 4). Although he asserts that his "family, municipalities, state and federal" have been harmed and that his project to restore a landmark was ruined, such broad and conclusory allegations do not set forth a "concrete and particularized" injury in fact. In any event, inasmuch as Maecker was not a party to the loans at issue, he has failed to demonstrate any "causal connection" between the amorphous injuries alleged and the conduct of Everhome, or its predecessors. In response to the instant motion, Maecker asserts that he has standing because he has invested money and labor into 133 Central Avenue and that Alliance's actions harmed his family. (Docket No. 13 at page 8). The plaintiff cites to no authority in support of this proposition and the Court has found none. Maecker has failed to demonstrate that he has standing in this case. The complaint should be dismissed on this basis.

Even if Maecker could satisfy constitutional standing requirements in this case, judgement in favor of the defendant would still be warranted.

Breach of Contract

The elements of a breach of contract claim in New York are: "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contact by the defendant; and (4) damages." Kretzmon v. Erie County, 2013 WL 636545 (W.D.N.Y. 2013)(Arcara, D.J.) citing Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co., 375 F.3d 168, 177 (2d Cir.2004). Here, Maecker has not pled, and cannot prove, the existence of an

agreement to which he is a party or that he adequately performed under the agreement. See Burrell v. AT&T Corp., 2005 WL 2656124 (S.D.N.Y.,2005)(spouse who is not a party to a contract lacks standing to assert contract claim).  In response to the instant motion, Maecker asserts the existence of a "contract implied in fact." (Docket No. 13 at page 9).  Although a "contract implied in fact may result as an inference from the facts and circumstances of the case, though not formally stated in words," such a contract nonetheless "derive[s] from the 'presumed' intention of the parties as indicated by their conduct." Kavitz v. International Business Machines, Corp., 458 Fed.Appx. 18 (2d. Cir. 2012) quoting Jemzura v. Jemzura, 36 N.Y.2d 496, 503–04, 369 N.Y.S.2d 400, 330 N.E.2d 414 (1975) (internal citations omitted).  Here, however, the intentions of the parties was indicated by their execution of a contract between Alliance and Stenroos. Maecker has not articulated facts which would support the contention that, in the face of the written contract between Stenroos and the bank, an implied contract existed between the bank and Maecker.  In any event, because the alleged agreement relates to real property, any such "cotract implied in fact" would run afoul of the Statute of Frauds, and would be unenforceable. Springwell Corp. v. Falcon Drilling Co., Inc., 16 F.Supp.2d 300 (S.D.N.Y.,1998)(Statute of frauds applicable to contract implied in fact.); Bell Independent Power Corp. v. Owens-Illinois, Inc., 2013 WL 2250734 (W.D.N.Y.,2013)(Subsection (a)(10) of New York's statute of frauds extends "to a contract implied in fact or in law." N.Y. Gen. Oblig. Law § 5–701(a)(10)).

In any event, any breach of contract claim in this case is untimely. In New York, the statute of limitations for a breach of contract claim is six years, and it begins running on the date of breach. Kretzmon v. Erie County, 2013 WL 636545 (W.D.N.Y. 2013)(Arcara, D.J.) citing

9

N.Y. CPLR § 213(2); Carvel v. Ross, 2011 WL 856283 (SDNY 2011). The loans involved in this matter were obtained by Stenroos from 1995 to 1998. To the extent it can be determined from the allegations in the complaint, Maecker asserts that the loan funds were not delivered to Stenroos. Any such breach would have taken place in 1998 at the very latest. Thus, Maecker has failed to bring this breach of contract claim within the six year statute of limitations.

Thus, Maecker's breach of contract claim must fail.

Tortious Interference

To state a contract-interference claim under New York law, a plaintiff must demonstrate the existence of a valid contract, the defendant's knowledge of the contract's existence, that the defendant intentionally procured a contract breach, and the resulting damages to the plaintiff. Catskill Development, L.L.C. v. Park Place Entertainment Corp., 547 F.3d 115 (2nd Cir. 2008); Int'l Minerals & Res., S.A. v. Pappas, 96 F.3d 586, 595 (2d Cir.1996); Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996). Again, the plaintiff has failed to demonstrate the existence of a valid contract to which he was a party.

To state a prima facie case for tortious interference with a prospective contract under New York law, plaintiff must show: "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) that the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship." Roeder v. Rogers, 206 F.Supp.2d 406 (W.D.N.Y.,2002)(Larimer, D.J) quoting Astor Holdings, Inc. v. Roski, 2002 WL 72936, at *19 (S.D.N.Y. 2002). In the instant case, the plaintiff has not articulated the existence of any business relations with a third party with which

10

the defendant interfered. Similarly, the plaintiff has not pled any facts which would support a claim that Everhome "acted with the sole purpose of harming" Maecker.  Moreover, while the plaintiff's papers lack reference to any specific facts, inasmuch as the loans in question were obtained between 1995 and 1998, the plaintiff has failed to demonstrate any conduct by the defendant within the three year statute of limitations period applicable to tortious interference claims in New York. See <u>Besicorp Ltd. v. Kahn</u>, 290 A.D.2d 147, 736 N.Y.S.2d 708 (3d Dept.,2002)(three year statute of limitations applicable to tortious interference claims).

The plaintiff's tortious interference claim must also fail.

Abuse of Process

Under New York law, malicious abuse of process action can be maintained against defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain collateral objective that is outside legitimate ends of process. <u>Roeder</u>, 206 F. Supp. 2d at 413 citing <u>Shain v. Ellison</u>, 273 F.3d 56, 68 (2d Cir.2001). Maecker has failed to identify any regularly issued legal process engaged in by Everhome or any act that compelled his performance or forbearance.  The plaintiff has also failed to allege any facts which would support a claim that Everhome employed intended to harm Maecker in order to obtain a collateral objective outside the legitimate ends of the process. In addition, the plaintiff has again failed to demonstrate any conduct by the defendant within the one year statute of limitations applicable to abuse of process claims in New York. <u>Kanciper v. Lato</u>, 2013 WL 5963080 (E.D.N.Y.,2013)(New York's one-year statute of limitations does indeed govern malicious prosecution and abuse of process

11

claims. See N.Y. CPLR § 215(3)). This claim, too, must fail.

<u>Fraud in Lending</u>

An action for fraud under New York law must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff ... discovered the fraud, or could with reasonable diligence have discovered it." <u>Koch v. Christie's Intern. PLC</u>, 699 F.3d 141 (2nd Cir. 2012); N.Y. C.P.L.R. 213(8). Maecker does not specify any fraudulent statement made by Alliance or Everhome (or any other entity). Inasmuch as the last loan underlying the plaintiff's claims in this case closed in 1998, and the infirmity alleged by the plaintiff is that "Alliance closed the loan but failed to fund disbursements for rehab" (Docket No. 1, page 8, ¶ 24), any claim based upon fraud is untimely. More than six years has elapsed since the last loan was closed and more than two years has passed since the plaintiff "could have with reasonable diligence have discovered" any fraud in connection with the defendant's failure to disburse the funds.

Maecker's fraud claim must also fail. In sum, all of the plaintiff's claims are barred by the applicable statutes of limitations and otherwise fail to state a claim upon which relief can be granted. The defendant's motion for summary judgment should be granted.

**The Plaintiff's Response to the Motion to Dismiss
& Cross-Motion for Summary Judgment**

In response to the defendant's motion to dismiss, the plaintiff filed a response and cross-motion for summary judgment. The plaintiff's response/cross-motion does not assert any factual

or legal arguments from which the Court could conclude that the plaintiff was entitled to summary judgement in this matter. Instead, the plaintiff attacks the defendant's counsel, stating:

> Smith (Everhome's counsel) as Akerman shareholder (Smith's law firm) uses a boilerplate Motion to Prevail without presentation of evidence by simply changing dates, changing assignees and changing names from standards like Ben Dover and Phil McCracken, to Bill Maecker and Judy Stenroos. The bulk and impressiveness of Akerman's standardize form document and list of Assignees is lost upon realizing the Motion bears no relevance to reality in this case. Fraud occurred, harm was done. Repair of harm is requested in this suit.

(Docket No. 13 at page 2).

Maecker also asserts that Smith "insults the integrity of this Honorable Court" (Docket No. 13 at page 14). Not to be understated, Maecker goes on to assert that "All citizens have been harmed and insulted by Smith's Motion to Dismiss" and "Sincere understanding of translating dollars to nails, screws and drywall escapes Smith." (Docket No. 13 at page 14). While the plaintiff goes to some lengths to attack defendant's counsel, the plaintiff's responding papers do not address the statute of limitations and many other legal arguments asserted by the defendant.

The plaintiff goes on to assert a series of seemingly unconnected conclusions. For example, under the title "MOTION TO DISMISS THIS CASE ABUSE OF PROCESS" (upper case in original), the plaintiff makes assertions such as:

"Counsel for Defendant attempts to delay and confuse this court by abuse of process."

"Defendant attempts to demean, belittle and dismiss this case without Trial."

"Defendant further demeans this Court and Western New York."

"Such was intent of Alliance in 1995 by intentionally failing to fund the loan ... ."

"Western New York was harmed."

13

"Western New York stands to be harmed again."

"Motion to Dismiss is baseless."

(Docket No. 13 at page 2). In support of his motion for summary judgment, the plaintiff relies upon "Judicial Notice" pointing to documents relating to the suspension of Alliance's lending license in 2007. (Docket No. 13 at pages 3-6). However, the fact that a Suspension Order was issued by the New York State Banking Department against Alliance in 2007 (Docket No. 1 at page 14) is not proof that there was a failure to disburse the loan funds at issue to Stenroos from 1995 through 1998. There is nothing in the 2007 Suspension Order that refers to any loan to Stenroos (or Maecker for that matter). The documents submitted by Maecker do not establish the existence of a contract between the plaintiff and Everhome (or any of its predecessors). Similarly, these documents do not establish the basis for any claim of tortious interference, abuse of process or fraud. Further, these documents do not raise a question of fact which would preclude the entry of summary judgment in favor of Everhome. To the extent the plaintiff seeks summary judgment with respect to the claims asserted in the complaint, the motion should be denied.

**Motion to Amend the Complaint**

The plaintiff has filed a motion to amend the complaint to increase his request for punitive damages (Docket No. 16 at page 6). Relying upon Proverb 6:31 of the New International Bible[2], Maecker seeks to increase his request for damages to $723,000,000.00. (Docket No. 16 at

---

[2] The plaintiff quotes the Bible as follows: "Yet if he is caught, he must pay sevenfold, though it costs him all the wealth of his house." (Docket No. 16 at page 8).

14

page 10).  There is no provision under the laws of New York providing that a sevenfold increase in damages is the appropriate calculation for punitive damages.  The plaintiff's motion to amend also includes a variety of allegations asserting that Stenroos "has now acted against Plaintiff by destruction of toymaking property" and that "[i]t is further the intent of Akerman (defendant's counsel's firm) to divide the family of Plaintiff." (Docket No. 16 at pages 4-5).  Nothing in the plaintiff's motion to amend addresses the infirmities of the plaintiff's original complaint.  In light of the recommendation that the defendant's motion to dismiss be granted, the plaintiff's motion to amend the complaint to increase the amount of damages sought is futile.  See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir.2002)(A pleading is futile if it cannot withstand a motion to dismiss).

**Request for Injunctive Relief**

Nestled within the plaintiff's complaint, Maecker seeks a temporary injunction enjoining the enforcement of a judgment and warrant of eviction entered in connection with a village court lawsuit entitled Stenroos v. Maecker. (Docket No. 1 at page 11). It would appear that the village court action involves the plaintiff and his ex-wife.  Maecker repeats his request for an injunction in his recent motion to amend. (Docket No. 16 at page 5). To obtain a preliminary injunction a party must demonstrate: (1) that [he or she] will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in its favor. Lusk v. Village of Cold Spring,  2007 WL 259873, *4 (2d. Cir. 2007) citing Bronx Household of Faith v. Bd. of Educ., 331 F.3d 342, 348-49 (2d

Cir.2003). "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n. 12 (1987).  A preliminary injunction is an extraordinary remedy which should not be granted lightly. Hanson Trust PLC v. MLSCM Acquisition, Inc., 781 F.2d 264, 273 (2d Cir. 1986) (a preliminary injunction is one of the most drastic tools in the arsenal of judicial remedies).  A party moving for a preliminary injunction has the burden of demonstrating that he or she will suffer irreparable harm if a preliminary injunction is not granted. Int'l.Brotherhood of Teamsters v. Local Union No. 10, 19 F.3d 786 (2d Cir. 1994). To demonstrate irreparable harm, a plaintiff must show that an injury is not remote or speculative, but actual and imminent, and that monetary damages will not suffice as a remedy. Forest City Daly Housing, Inc. v. Town of N. Hempstead, 175 F.3d 144, 153 (2d Cir. 1999).  In light of the recommendation that the plaintiff's claims be dismissed in their entirety, the plaintiff has not demonstrated that he is likely to succeed on the merits of his claims. To the extent the plaintiff seeks injunctive relief, the request should be denied.

**Conclusion**

Based on the above, it is Ordered that the plaintiff's motion to amend the complaint be DENIED. It is further recommended that the defendants' motion to dismiss, treated herein as a motion for summary judgment, should be GRANTED. Further, the plaintiff's cross-motion for summary judgment and to amend the complaint should be DENIED.  The complaint should be dismissed in its entirety.

Pursuant to 28 U.S.C.  §636(b)(1), it is hereby ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may**

**result in the District Court's refusal to consider the objection.**

       So Ordered.

                                                /s/ Hugh B. Scott
                                        United States Magistrate Judge
                                        Western District of New York

Buffalo, New York
January 6, 2014